UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GOODBYS CREEK, LLC,

        Plaintiff,

vs.

                                  Case No: 3:07-cv-947-J-33HTS

ARCH INSURANCE COMPANY,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's Motion for Judgment on the Pleadings (Doc. # 18), filed on December 31, 2007. Plaintiff filed its Response (Doc. # 23) on January 18, 2008. For the reasons stated below, Defendant's Motion is granted in part and denied in part.

**I.**    **Background**

The dispute in this case centers around a performance bond and payment bond that were issued by Arch Insurance Company ("Arch") pursuant to a construction contract to build a condominium project. (Doc. # 1 at 3.) On October 4, 2005, Goodbys Creek, LLC ("Goodbys"), owner of the property on which the project was to be built, entered into an A101-1997 Construction Contract ("Contract") with a third-party general contractor ("the Contractor"). (Id.) Pursuant to the terms of the Contract, the Contractor furnished a performance bond and payment bond naming the Contractor as principal and Goodbys as obligee. (Id.)

Section 2.2.1 of the General Conditions of the Contract for Construction provides:

> The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

(Doc. # 1 at 29-30.) According to Arch, on March 1, 2007, the Contractor requested reasonable evidence that Goodbys had made necessary financial arrangements to fulfill its obligations, and that Goodbys "failed and refused to provide any evidence of its financial arrangements." (Doc. # 9 at 12.) On March 30, 2007, the Contractor suspended work on the project for a period of thirty days. (Id.) The Contractor placed a construction lien on the property on April 23, 2007 (Doc. # 39-2 at 58) and on May 25, 2007, the Contractor served notice on Goodbys that it was terminating the Contract effective June 6, 2007. (Doc. # 9 at 12.) The Contractor assigned all rights on the construction lien and under the Contract to Arch on October 23, 2007. (Doc. # 39-2 at 54-57.)

Between the March 1, 2007 request for assurances and the May 25, 2007 notice of termination, Arch alleges that the Contractor submitted three separate pay applications to Goodbys for a total amount just over $4,000,000. (Doc. # 9 at 12.) It is further alleged that Goodbys did not object to these pay applications

-2-

within the time allowed under the Contract but failed to pay any of the amounts due.  (<u>Id.</u> at 13.)

Following Goodbys' alleged failure to pay the amounts owing to the Contractor, many subcontractors and materialmen filed claims of lien against the project and made claims against the payment bond to collect amounts owed under their subcontracts with the Contractor.  (Doc. # 18 at 4.)  Arch, as surety on the payment bond, admits that it paid some of the subcontractors and materialmen who had recorded claims of lien, took assignment of the claims of lien, and received satisfaction of liens from the lienors.  (Doc. # 9 at 3-4.)

Goodbys' Complaint alleges that the Contractor breached the Contract by wrongfully terminating the Contract and abandoning the project.  (Doc. # 1 at 3.)  Despite providing Arch and the Contractor with all default notices required under the performance and payments bonds and the Contract, Goodbys contends that Arch failed to remedy the defaults, failed to hire another contractor to complete the work under the Contract, and otherwise failed to perform its obligations under the performance bond.  (<u>Id.</u> at 3-4.)  In addition, Goodbys alleges that Arch wrongfully paid every subcontractor who made a claim against the payment bond, even though the terms of the payment bond only required Arch to pay such claims of lien "<u>if and only if</u>, [Goodbys] was not in default."  (<u>Id.</u> at 6 (emphasis in original).)

Goodbys filed its five-count Complaint (Doc. # 1) against Arch on October 5, 2007, claiming breach of the performance bond, breach of the payment bond, breach of the duty of good faith and fair dealing with respect to both bonds, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  On November 15, 2007, Arch filed its Answer, Affirmative Defenses, and Counterclaim (Doc. # 9), asserting counterclaims for breach of contract (one as subrogee and one as assignee of Contractor), foreclosure of a construction lien (as subrogee and assignee of Contractor), quantum meruit (as subrogee of Contractor), and unjust enrichment (as subrogee of Contractor).  Arch amended its counterclaim on June 13, 2008 (Doc. # 39-2), to join an additional counterdefendant, Fairfield Financial Services ("Fairfield"), and to assert an additional claim for impairment of suretyship rights against both Goodbys and Fairfield.[1]

Arch filed the instant Motion for Judgment on the Pleadings, asserting that there is no genuine issue as to any material fact and that Arch is entitled to judgment as a matter of law on Counts II, III, IV, and V of Goodbys' Complaint.  Arch argues that: (1) Florida law and the terms of the payment bond preclude Goodbys, as

---

[1]Arch attached its amended counterclaim to its Unopposed Motion to Amend and for Joinder (Doc. # 39) filed on June 2, 2008.  The Court deems the amended counterclaim filed as of the date the Court granted the motion to amend, on June 13, 2008 (Doc. # 44). The counterclaims are not implicated in the subject motion and therefore the amendment to the counterclaim did not moot the pending motion for Judgment on the Pleadings.

owner and obligee, from asserting a claim against the payment bond; (2) Goodbys has no factual basis to assert a breach of the duty of good faith and fair dealing claim against either bond; (3) Goodbys' breach of good faith claims are actually claims for bad faith against a surety, which are precluded by Florida law; and (4) Goodbys has no factual basis for its FDUTPA claim. (Doc. # 18 at 2.)

Goodbys' Response argues that Arch is not entitled to judgment as a matter of law because: (1) Florida law permits an owner/obligee named in a bond to maintain an action thereon and Goodbys has properly alleged damages due to the breach; (2) Goodbys has identified the specific provisions of the bonds that have been breached and there is persuasive legal support for permitting simultaneous claims for breach of contract and breach of good faith and fair dealing; (3) Florida law recognizes separate causes of action for statutory bad faith and breach of good faith and fair dealing; and (4) Goodbys' Complaint specifies with particularity the unfair and deceptive practices of Arch that support a claim for violation of FDUTPA. (Doc. # 23 at 2-15.) Alternatively, Goodbys requests permission to amend its Complaint to correct any technical infirmities that may be found by the Court. (Doc. # 23 at 15.) The Court will address these arguments in turn.

**II. <u>Legal Standard</u>**

"Judgment on the pleadings is appropriate where there are no

material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). The court is to accept the facts in the complaint as true and view them "in the light most favorable to the nonmoving party." Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002). The motion may be granted only if the plaintiff "can prove no set of facts" which would entitle him to relief. Id.

### III. Analysis

#### A. Breach of the Payment Bond

Arch offers two reasons why it is entitled to judgment as to Count II for breach of the payment bond: (1) Goodbys is not a claimant under the bond, and (2) Goodbys could not have been damaged by an alleged improper payment to lienors under the payment bond. (Doc. # 18 at 7-8.)

Goodbys argues that it is not asserting a right as a claimant, but as the obligee on the payment bond. Citing to Crabtree v. Aetna Casualty & Surety Co., Goodbys maintains that Florida recognizes an owner-obligee's right to maintain a suit against a surety on a payment bond. 438 So. 2d 102 (Fla. 1st DCA 1983). In Crabtree, a combined performance and payment bond was issued to a development company and the lender as obligees "to secure performance under the construction agreement of the contractor, principal or obligor under the bond . . . ." Id. at 104. Two

partners of the development company individually brought suit against the surety to recover damages arising from the contractor's failure to complete the construction project on schedule. Id. The trial court entered a final judgment in favor of the surety, and the individual partners appealed. Id. at 105. The Florida appellate court held that, although the individual partners were not named owners-obligees on the surety bond, their status as third-party beneficiaries of the contract allowed them a derivative right to recover those damages that the development company could have recovered from the surety. Id. at 105-06.

Although the holding in Crabtree concerned the rights of third-party beneficiaries rather than obligees, the court did discuss the nature of the surety relationship and the rights of an owner-obligee under a performance and payment bond. Id. at 105. The court noted that, "Generally, the owner-obligee named in a bond may maintain an action thereon, and the owner-obligee's right to recover is dependent upon the terms of the bond and the ability to establish that damages were suffered under such terms." Id.

Although the court in Crabtree acknowledged the owner-obligee's right to damages in some circumstances, the facts in Crabtree were notably different from the facts in this case. The bond at issue in Crabtree was a dual-purpose bond and the obligee was seeking damages for breach of the performance provisions of the bond. Id. at 104. Here, Goodbys is seeking damages for breach of

a payment bond. The obligations arising under a payment bond differ significantly from those under a performance bond and, because of these differences, the possibility of establishing damages under the terms of the payment bond are less likely.

Goodbys alleges that it was injured by Arch's payment of the claims of the subcontractors at a time when it was not legally required to do so. In support of this contention, Goodbys cites language in the payment bond that limits Arch's liability to Goodbys and claimants in the event that Goodbys has not paid the Contractor pursuant to the construction contract. However, the cited provisions are meant to <u>release</u> the surety from an obligation to pay where the owner has not paid the contractor; the language places no affirmative duty on Arch to refrain from paying valid claims submitted under the bond.

In any case, the language conditioning Arch's payment to claimants on Goodbys' payment to the Contractor is invalid under Florida's construction lien laws. A payment bond cannot be construed as a "conditional payment bond" unless it meets three explicit requirements under Florida Statutes § 713.245: (1) the bond must be listed in the commencement of the project as a conditional payment bond and recorded together with the notice of commencement; (2) the words "conditional payment bond" must be contained in the title of the bond on the front page; and (3) the bond must contain specific language regarding its conditions of

payment on the front page. Fla. Stat. § 713.245(1).

Arch asserts that the bond is not listed as a conditional payment bond in the commencement for the project, but the commencement has not been submitted to the Court for confirmation of that allegation. The payment bond has been submitted, however, and it does not contain the words "conditional payment bond" in the title. (Doc. # 39-2.) Thus, the payment bond must be construed and applied as an unconditional bond under Florida Statutes § 713.23. See Home Elec. of Dade County, Inc. v. Gonas, 547 So. 2d 109, 110 (Fla. 1989) (mandating that, as a statutory creature, "the mechanics' lien law is to be strictly construed in every way"); N. Am. Specialty Ins. Co. v. Hughes Supply, Inc., 705 So. 2d 616, 618 (Fla. 4th DCA 1998) (holding that the restriction on the duty of a surety to pay lienors under § 713.245 does not arise unless the specific requisites of that statute are met, and in their absence, the bond should be considered an unconditional bond under § 713.23). Accordingly, Goodbys' argument that the language of the bond precluded Arch from paying the lienors' claims is incorrect as a matter of law.

It is therefore necessary to look to the terms of the payment bond and the expectations of the parties to determine Goodbys' right to maintain a breach of contract action on the bond. The purpose of a payment bond is to protect the owner-obligee from any damages resulting from liens arising out of the construction

project, other than the lien of the general contractor. See Corp. of Pres. of Latter Day Church of Jesus Christ v. Seymour Elec. Supply Co., 558 So. 2d 88, 90 (Fla. 1st DCA 1990) (holding that once the owner receives a payment bond from the contractor, it is thereafter exempt from liens of subcontractors, which can only be enforced against the surety). The legal effect of furnishing a valid payment bond is "to exempt the owner and the property from the provisions of the mechanic's lien statutes." Shores Supply Co. v. Aetna Cas. & Sur. Co., 524 So. 2d 722, 724 (Fla. 3d DCA 1988).

Thus, Goodbys' expectations in securing a payment bond were for Arch to satisfy the claims of any subcontractors or materialmen asserted against the project. The language of the bond provided such protection, stating that every claimant defined in the bond who has not been paid within ninety days after completion of their work can sue on the bond for amounts "justly due" and Goodbys "shall not be liable for the payment of any costs or expenses of any such suit." (Doc. # 39-2 at 21, ¶ 2.) Florida Statutes § 713.23, which was incorporated by reference into the payment bond, provides that a payment bond "shall secure every lien under the direct contract accruing subsequent to its execution and delivery, except that of the contractor" and every such lien "shall be transferred to [the bond] with the same effect as liens transferred under [Section] 713.24." Fla Sta. § 713.23(2).

Arch correctly points out that, because all the liens

submitted by subcontractors and materialmen are transferred to the payment bond, Arch's decision to pay those lienors' claims have no effect on the project.  (Doc. # 18 at 9.)  Goodbys claims that Arch's assertion that the liens have attached to the bond is "factually inaccurate" but fails to provide any explanation as to how it is inaccurate, nor does it describe what the "true" circumstances are.  (Doc. # 23 at 4.)  Looking to the Complaint, Goodbys' alleges that it was damaged because Arch "paid every subcontractor who recorded a claim of lien and then took an assignment of the lienors' claims of lien."  Those actions, however, are consistent with the purpose of the payment bond and, due to the protections of the mechanics' lien laws, cannot cause injury to Goodbys.  Pursuant to § 713.23(2), these labor and material liens cannot attach to the project's property.

The Court's conclusion that Goodbys cannot state a claim for breach of the payment bond is reinforced by the Florida Supreme Court's holding in <u>Standard Accident Ins. Co. v. Bear</u> that an owner-obligee has "no right of recovery on his own behalf against the [surety on a payment bond] on account of materialman's claims unless and until he actually suffer[s] damage by being compelled to pay them."  184 So 97, 102 (Fla. 1938).  On the undisputed facts material to this claim, Goodbys cannot establish any injury due to Arch's conduct in paying submitted claims and accepting assignment of the mechanics' liens.

Accordingly, assuming that the facts asserted in the Complaint are true and construing them favorably to Goodbys, the Court finds that Goodbys cannot establish that Arch breached the terms of the payment bond or that Goodbys was damaged by Arch's payment of the claims of lien. Thus, Arch is entitled to judgment as a matter of law as to Count II of Goodbys' Complaint.

### B. Breach of the Covenant of Good Faith and Fair Dealing with Respect to the Payment Bond

Arch asserts two arguments supporting judgment as to Count III of Goodbys' complaint: (1) Goodbys cannot allege an express term of the bond that was breached, and (2) Goodbys' claim for breach of good faith and fair dealing is duplicative of its Count II breach of contract claim. (Doc. # 18 at 10-13.)

Every contract includes an implied covenant of good faith and fair dealing to protect the parties' reasonable expectations under the contract. Centurion Air Cargo, Inc. v. United Parcel Serv., 420 F.3d 1146, 1151 (11th Cir. 2005). The duty of good faith and fair dealing "attaches to the performance of a specific contractual obligation" and therefore a claim for breach of this duty cannot be maintained absent a "breach of an express term of the contract." Id. at 1151-52.

Goodbys alleges that Arch breached the conditional-payment provision of the payment bond by paying lienor's claims when it was not legally required to do so. (Doc. # 23 at 5.) Because the Court has held above that the payment bond was not a conditional

payment bond under Florida Statutes § 713.245, and that, even if valid, the provision imposed no affirmative duty on Arch to refuse payment of liens, it follows that Arch did not breach an express term of the payment bond. Accordingly, Goodbys cannot establish a breach of the covenant of good faith and fair dealing under Florida law and Arch is entitled to judgment as a matter of law as to Count III of Goodbys' Complaint.

### C. Breach of the Covenant of Good Faith and Fair Dealing with Respect to the Performance Bond

In support of Arch's request for judgment as to Count IV, Arch asserts that Goodbys cannot establish that an express term of the payment bond was breached. (Doc. # 18 at 13-14.) Goodbys argues that its Complaint references both the Contract provision that has been breached and Goodbys' reasonable contractual expectations that were not met due to Arch's conduct. (Doc. # 23 at 8-9.)

Goodbys' Complaint makes general reference to the Contract provision that permits the Contractor to receive adequate assurances as a condition of continuation of work on the project. The Complaint asserts that Arch made "unreasonable and non-contractually required demands upon [Goodbys] to provide reasonable evidence of [Goodbys'] ability to pay for the Project," and then refused to comply with the terms of the performance bond due to allegations that Goodbys failed to provide the required proof of ability to pay. (Doc. # 1 at 8-9.) Goodbys alleges that the Contract, which was incorporated by reference in the performance

-13-

bond, only requires Goodbys to provide reasonable evidence of its ability to finance the work performed under the written agreement with the Contractor, not completion of the entire project, and that Arch's unfair demand for more assurances than the Contract called for was a bad faith attempt to avoid its contractual obligations.

In its Response to the subject motion, Goodbys quotes the pertinent language of Section 2.2.1 of the General Conditions of the Contract, which allow the Contractor to request assurances from the owner at any time. Goodbys asserts that, based on this contract provision, it reasonably expected Arch to meet its obligations under the performance bond if Goodbys provided reasonable evidence of its ability to pay for the work by Arch.

Arch argues that the referenced Contract term imposes no obligations on Arch and therefore Arch could not have breached that provision. The Court disagrees with this reasoning. Section 2.2.1 states that the owner's provision of such evidence "shall be a condition precedent to commencement or continuation of the Work." (Doc. # 1 at 29-30.) This language allows the Contractor to stop performance based on its subjective determination of what constitutes "reasonable evidence" of the owner's ability to meet its financial obligations. Where the terms of an agreement "afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable

-14-

expectations of the other party." Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999). In this case, Goodbys reasonably expected Arch, who had stepped into the Contractor's shoes, to act in good faith in requesting assurances and in determining whether Goodbys had met its burden in producing adequate assurances.

In a breach of the duty of good faith claim, the party's alleged failure to perform contractual responsibilities must also be "prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act" that disappoints the reasonable contractual expectations of the other party. Mount Sinai Med. Ctr., Inc. v. Heidrick & Struggles, Inc., 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004). In this regard, Goodbys alleges that Arch's insistence that Goodbys provide more assurances than what the express terms of the Contract required was a deliberate, bad faith attempt by Arch to avoid its responsibilities under the Contract and performance bond.

Although Florida law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing where the party accused of the breach "has in good faith performed all of the express contractual provisions," the Court finds that Goodbys has raised sufficient factual allegations regarding Arch's failure to perform in good faith under Section 2.2.1 to proceed on its Count IV claim. Burger King Corp. v. Weaver, 169 F.3d 1310, 1316

(11th Cir. 1999).

Arch alternatively argues that Goodbys' claim is essentially a "bad faith" action against a surety, which is barred under Florida law. (Doc. # 18 at 15.) The Court finds the Southern District of Florida's reasoning on this issue persuasive. Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp., 504 F. Supp. 2d 1307 (S.D. Fla 2007). In Townhouses, the Southern District considered an insurer's motion to dismiss an insured's claim for breach of the implied covenant of good faith and fair dealing on the grounds that it was actually a bad faith claim filed prematurely. Id. at 1309. Applying Florida law, the court held that the insured's claim was not a bad faith claim because a statutory bad faith action "is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract." Id. at 1310. In contrast, an action for breach of the duty of good faith and fair dealing contemplates whether a contractual term was breached and whether the parties' contractual expectations have been met. Id. at 1311.

As discussed above, the Court finds that Goodbys has alleged facts necessary to maintain an action for breach of the implied covenant of good faith. Goodbys has sufficiently identified the Contract provision that was allegedly breached by Arch and explained how its reasonable contractual expectations were disappointed by Arch's conduct. Goodbys' allegations as to Count

IV are therefore distinct from those of a bad faith action and Arch's argument in this regard is rejected.

The Court finds that Goodbys has sufficiently alleged a cause of action for breach of the implied duty of good faith and fair dealing as to the Contract and the performance bond. Therefore, Arch's request for judgment on the pleadings as to Count IV is denied.

### D.   Violation of FDUTPA

Arch asserts that judgment on the pleadings should be granted as to Count V of Goodbys' Complaint because Goodbys cannot state a cause of action under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201-501.213. (Doc. # 18 at 19-20.)

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 502.204. The Florida Supreme Court defines an unfair practice under FDUTPA as "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" PNR, Inc. v. Beacon Prop. Mgmt. Inc., 842 So. 2d 773, 777 (Fla. 2003) (internal citations omitted). A deceptive act is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the

consumer's detriment." Id. (quoting Millenium Commc'n & Fulfillment, Inc. v. Office of the A.G., Dept. of Legal Affairs, St. of Fla., 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).

Arch contends that Count V fails to state a cause of action because Goodbys does not assert any ultimate facts showing that Arch's conduct constitutes unfair or deceptive acts under FDUTPA. (Doc. # 1 at 9-10.) In addition, Arch argues that Goodbys has not alleged or indicated that the surety relationship between Arch and Goodbys meets the definition of trade or commerce under FDUTPA.

FDUTPA defines "trade or commerce" as:

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise of any good or service, or any property, whether tangible or intangible, or any other commodity, or thing of value, wherever situated.

Fla. Stat. § 501.203(8). Only consumers may bring private suit under FDUTPA. Fla. Stat. § 501.202. Florida courts have interpreted "consumer" to mean an individual or entity that is a "purchaser" of goods or services. Shibala v. Lim, 2000 U.S. Dist. LEXIS 20053, at **13-14 (M.D. Fla. 2000) (citing Florida law); see Badillo v. Playboy Ent. Group, 2006 U.S. Dist. LEXIS 17205, at **25-26 (citing to Florida cases and granting summary judgment in favor of defendant where plaintiffs offered no evidence establishing they were purchasers of any goods or services).

Goodbys has not cited any Florida law to support a finding that it was a purchaser of goods or services in its transactions

with Arch. Further, this Court finds no basis for conferring consumer status on Goodbys as the beneficiary of construction bonds secured by the Contractor.

Thus, it is appropriate to grant Arch's motion for judgment on the pleadings as to Count V of Goodbys' Complaint.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Judgment on the Pleadings (Doc. # 18) is **GRANTED in part and DENIED in part.**

(2) Judgment is **GRANTED** in favor of Defendant as to Counts II, III, and V of the Complaint.

(3) Defendant's Motion for Judgment on the Pleadings is **DENIED** as to Count IV of the Complaint.

**DONE** and **ORDERED** in chambers in Jacksonville, Florida, this 31th day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

copies to:

All counsel of record